15 minutes per side. Save your time for rebuttal if you choose to. In this gun possession case, the state's critical piece of evidence was a recording of Anthony Reynolds, stating that he had purchased the weapon in issue from a corrupt detective in an effort to obstruct his prosecution. The tape also included, however, false and prejudicial evidence, stating that Reynolds' father told defense counsel that the gun was missing, and defense counsel then used that information in an attempt to work a plea deal with the state. The trial court's failure to deal with this evidence appropriately before trial, the admission of this evidence before the jury, and the trial court's refusal to allow defense counsel to defend against this evidence during trial, led to a cascade of errors that requires reversal of Reynolds' conviction. First of all, prior to trial, defense counsel informed the court of this potential conflict, and the court, in failing to fulfill its duty pursuant to Holloway v. Arkansas, failed to either cure the conflict or investigate the conflict such that we could be sure that the conflict- When you say he didn't investigate, he held a hearing. That's what I was about to say, but Holloway requires the court to investigate to the point that the court can be assured that the potential conflict has no impact on the right of the defendant's right to counsel. In this case, it's clear from the hearing that the evidence was placed before the court, and it's undisputed that, according to this tape, Reynolds' father told defense counsel that he possessed this missing gun. That evidence alone showed that the counsel was aware of the plot to undermine the prosecution. That placed counsel in an impossible position, if that evidence reached the jury, of arguing that Reynolds was innocent in the face of evidence that counsel himself was aware of the plot prior to trial. Moreover, the recording stated that Reynolds' father told defense counsel about the missing weapon, and then counsel went to the state in an effort to work a plea deal leveraging that information. Now, I know that the court believed that that passage indicated that it was the father who went to the state to work the plea deal, but there's nothing suggesting the jury read that statement in that fashion. In fact, there's every reason to believe the jury would have read that to show that counsel, armed with that information, the information that the gun had been removed from evidence, counsel then went to the state in order to work a plea deal. And that evidence, again, that evidence undermined counsel's credibility before the jury and put, again, counsel in an impossible position. Did the state, during the course of the trial, stress this evidence before the jury and implicate defense counsel? Did they argue that he was in on this? The state did not. But, again, the jury heard this evidence repeatedly. It's right there on the tape recording. It's plain as day. But it's mainly in reference to the father. Well, I think, again, Your Honor, it's undisputed that the father told defense counsel prior to trial that the gun was missing. Again, that alone shows that defense counsel is at least aware of the plot to obstruct the prosecution. Now, the jury knows already then. The counsel knows about the plot and apparently did nothing to cure it. That, I suggest, again, put counsel in an impossible position. What was counsel supposed to do to cure the plot? The mere fact that he knows the gun is missing, how does that implicate counsel? Well, I mean, counsel knows that the gun is missing. Counsel, what if he does? Then counsel is, by continuing to represent Reynolds, is assisting Reynolds in an illegal activity. How so? I don't get it. Reynolds attempted to frustrate the prosecution by removing the incriminating piece of evidence from the police evidence locker. If he merely knows that, that is not what you just said. If counsel knows his client is attempting to obstruct the prosecution. No, you just said he knows it's missing. And he knows it. Well, I mean, I think. He knows it's missing. It could be missing because it was missing from the vault, missing from the clerk's office. But we know that Reynolds says on the tape, and this is, again, the important part, the jury received the tape, the tape says, I brought the gun back from the detective in order to obstruct my prosecution. And my father told the lawyer about it. The lawyer is in on, he knows about the attempt to obstruct the prosecution at that point. And whether or not he, I mean, it comes down to he, whether or not, in the second part of the recording, whether he refers to the father of the counsel. And I submit that the jury very well could have understood that he didn't mean the defense counsel negotiated the scene. Did the judge go through that clearly and specify by putting he, she, it into each phrase and making it clear what it meant so that they would know? Not to the jury. The jury just received the statements. No, but that was the hearing that he had. He also ordered the redaction of any reference to the murder that your client was involved in. That's true. But again, the jury heard, it's undisputed, the jury heard that defense counsel was aware of the missing gun. I repeat this because the important part of Holloway, the court has to investigate to ensure that any potential conflict is too remote, too remote to have any impact on the defendant's right to counsel. And here, it's clear the conflict is not too remote because counsel, right through the tape, is clearly aware that the gun is missing and that the gun is missing because Reynolds and his father are attempting to frustrate the prosecution. Again, that puts the counsel in an impossible position for the jury. It also creates, moving on to my second argument, Part B, it also tainted counsel before the jury and undermined integrity of the proceedings because with the jury viewing counsel as having known about this attempt to frustrate the prosecution and even participated in the plot to frustrate the prosecution, there is no way that counsel could function as in that way being tainted. Counsel could not provide the representation that Reynolds deserved under the due process clause. In this case, no one, the judge or the prosecution, believed the defense counsel had done anything either illegal or unethical. Therefore, he was not under any pressure to redeem himself in the eyes of anybody. So where does the conflict come in here? Well, again, the conflict comes since the jury. The jury thinks, the jury knows that Reynolds tried to frustrate the prosecution, but now the jury thinks that counsel was in on it as well. Where do you get that from? Again, the taped conversation. Yeah, but you're drawing a conclusion that's not supported by anything factually. Well, I think that a plain reading of the recording, listening to the recording shows that first of all, the lawyer knew the gun was missing. Reynolds' father told him the gun was missing. The defense counsel, I mean, is not going to think, and the jury is not going to think, more importantly, that this missing gun, you know, there's some legitimate reason for the father to have the gun, certainly. It's clear that the gun was removed to obstruct Reynolds' prosecution. And then it comes down, again, to this interpretation of who exactly is going to be working and dealing with the state. It's clear that the jury could have understood that he referred to counsel and that it's counsel, armed with this evidence, this information that the gun is missing, is then attempting to work a deal with the state. And again, that shows that counsel is in on the plot to obstruct Reynolds' prosecution. And if the jury is viewing counsel in such a light, it completely undermines counsel's function, because the jury is going to think that counsel himself is untrustworthy and lacks integrity. Now, if the President has more questions.  Defendant chose to have a conversation on the phone while he was incarcerated, where he admitted that he bought the gun back from Detective Durow. He also made numerous statements implicating himself in the plot to destroy or hide evidence in order to avoid prosecution. This evidence was properly admitted to show his consciousness of guilt. Defendant now challenges the admission of the final paragraph of the transcript. However, this paragraph contains incriminating statements. Defendant explains how he doesn't want anyone to know the gun is missing, so that he can gain an acquittal, that he's counting on the fact that no one knows, and that this is why he wants a speedy trial. There is no time for anyone to discover the missing evidence. The trial court did not abuse its discretion in admitting this portion of the tape. Defendant claims that the statement should not have been admitted because they implicate defense counsel in the plot to hide evidence. However, deference should be given to the trial court's finding that it was the defendant's father that was working the deal, not defense counsel. It's pretty evident from the tape what is going on here. The defendant is angry. He's angry at his father. Defendant is counting on the fact that the gun is missing to gain an acquittal and his father, for whatever reason, felt like he should disclose this information in order to work a deal on his son's behalf. And the defendant is angry about that. It's pretty evident from the tape that that is what happened and the trial court's finding to that effect should be given deference. Further, there is no prejudice to the defendant by the admission of this portion of the tape. There are two officers who identify defendant as the person who pointed a weapon at them on October 18, 2005, and defendant is not challenging the most significant and damaging portion of the tape, the part where he says, I bought the gun back from Detective Durrell. This evidence combined with the officer's testimony makes this case overwhelming and there is absolutely no prejudice with the admission of the final portion of this paragraph. Your interpretation of the final paragraph is that the defendant was not the one who was seeking some type of benefit by pleading guilty? Absolutely, he was not. First of all, the tape is clear. It's defendant's father that's acting on his behalf, not the defendant. There's no attempt by the defendant to work a plea and, in fact, he's stating the opposite. There's no way he's entering into any plea because he's hoping to go to trial without any gun and with missing evidence in order to gain an acquittal. As far as defendants claim that this somehow implicated defense attorney in the plot, it does not. Even if you could possibly interpret this to mean that it was not the defendant's father and that it was defense counsel, this doesn't implicate defense counsel in any criminal wrongdoing. It merely states that he knew that he was informed that the gun was missing. So what? That doesn't mean he was implicated in any criminal plot. Absent something saying that the defense counsel was working with the detective to somehow get the gun back, he's not implicated in anything. And, in fact, at the beginning of the tape, the defendant specifically says that the lawyers don't know anything. So there's no merit to this claim that the jury might have thought that the defense attorney was somehow in on the plot to hide or destroy evidence. There's just no basis. There's no other questions. For these reasons and all the reasons stated in our brief, we respectfully request that you affirm the defendant's conviction and sentence for armed habitual criminal. Thank you. Thank you. In reference to your question about whether or not plea-related evidence was made in his trial, we look forward to asking that the language of that rule doesn't limit who was involved in the plea negotiations, whether it be his father, his counsel, or what half the court can do at the same time. Plea-related evidence, of course, is held to be a reversible error, a mission of this reversible error, regardless of the evidence presented against the defendant. I'll also point out that people with verses blue, that an error that so affects the integrity of the proceedings creates a reversible error, despite the evidence against the defendant. And that is precisely what we have here. As I argued, the defense counsel was tainted for the jury and therefore could not provide the defense that the Constitution requires. Thank you very much. Thank you. The matter will be taken under advisement.